**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHRISTOPHER COOPER, | : | |
| | : | Civil Action No. 11-1272 (NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN DONNA ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner pro se | Counsel for Respondent |
| Christopher Cooper | Mark Christopher Orlowski |
| F.C.I. Fort Dix | Assistant U.S. Attorney |
| P.O. Box 2000 | Office of the U.S. Attorney |
| Fort Dix, NJ  08640 | District of New Jersey |
| | 970 Broad Street |
| | Suite 700 |
| | Newark, NJ  07101 |

**HILLMAN**, District Judge

Petitioner Christopher Cooper, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
 (a) Writs of habeas corpus may be granted by
 the ... district courts ... within their
 respective jurisdictions ...
 (c) The writ of habeas corpus shall not
 extend to a prisoner unless- ... (3) He is in
 custody in violation of the Constitution or
 laws or treaties of the United States ... .

disciplinary proceeding.  The sole respondent is Warden Donna Zickefoose.

For the reasons set forth below, the Petition will be denied.

## I.  BACKGROUND

Petitioner Christopher Cooper is a federal prisoner serving a 72-month sentence imposed by the U.S. District Court for the Eastern District of North Carolina.  See United States v. Cooper, Criminal No. 08-0021 (E.D.N.C.).  Petitioner's projected release date is December 31, 2013.

On October 9, 2009, Petitioner was issued Incident Report No. 1928606, charging him with Attempted Stealing, in violation of Code 219A.[2]  The Description of Incident reads as follows:

> (Date: 10/9/2009 Time: 1:30 pm Staff became aware of incident)
>
> On October 9, 2009 while conducting an inspection of the Paint Shop supply cart, Inmate Cooper, reg# 51360-056 and Inmate Honeycutt, reg# 21698-058, I found one case of BrushyCreek Premium Chicken Breast valued at $48.72 wrapped up in a tarp [and] one case of Ryan's Ranch Turkey Summer Sausage value[d] at $116.64 per case wrapped up in a blanket on the bottom shelf of the supply cart.  Inmates Cooper and Honeycutt were in the Commissary on a work pass (#5595) to paint the interior of the building.  The inmates were then escorted to the Lieutenant's office and questioned on [whose] items they were.  Inmate Cooper denied any involvement.

---

[2] Prohibited acts and available sanctions are detailed in 28 C.F.R. § 541.3.  There is no dispute that the sanctions imposed fall within those permitted by § 541.3.

(Answer, Decl. of Tara Moran, Ex. 3, Incident Report No. 1928606, ¶ 11.)  The Incident Report was served on Petitioner and the matter was referred to the Unit Disciplinary Committee ("UDC").

On October 22, 2009, the UDC held the initial hearing. Petitioner stated to the UDC, "I denied any involvement, I'm not a rat.  I don't know anything.  The cart was left in the commissary when we went to lunch."  (Answer, Decl. of Tara Moran, Ex. 3, Incident Report No. 1928606, ¶ 17.)  Other facts relied upon are also reflected in the portion of the Incident Report reflecting UDC action.

> Inmate Cooper stated he was not with the cart the entire time.  Cooper stated he and Honeycut went to lunch and the cart remained in the Commissary.  Cooper stated he and Honeycut were being searched everyday while they performed the work at the commissary.  Cooper further stated there was no reason for him to take anything from Commissary because he spent $300.00 in the month of October.  Cooper stated he never got to pull the tarps from the cart or look into the cart until the writer instructed he and Honeycut to submit to a pat-search.  All facts are contained in the report.

(Answer, Decl. of Tara Moran, Ex. 3, Incident Report No. 1928606, ¶ 25.)  The Investigator concluded as follows:

> Based on the writer of the report, and the supportive documents, the investigator concludes the report is valid and warrants further action.  Cooper denies any involvement or knowledge of how the commissary items got on the paint cart.  Both inmates were on the work pass assigned to Bldg 5710- Commissary.  Therefore, both were responsible for maintaining what was on the cart arriving and departing a work site.

(Id., ¶ 26.)  At the conclusion of the hearing, based on the seriousness of the charge, the UDC referred the Incident Report to the Disciplinary Hearing Officer ("DHO") for disposition.

Petitioner was advised of his rights before the DHO.  He did not request a staff representative or witnesses.  (Answer, Decl. of Tara Moran, Exs. 5, 6.)  Petitioner did make a statement at the DHO hearing, summarized on the DHO Report as follows:

> Inmate COOPER, CHRISTOPHER register number 51360-056 was read his rights before the DHO and acknowledged that he understood them.  He was read the body of the incident report and made the following statement:  "The cart was left unattended.  It was in the back room in commissary.  We told the guard were work [sic] till 10:30 and was going to [] take the cart back to the unit.  I went back at 11:15 a.m.  During that time the commissary workers were back there.  I did not place anything on it.  When I came back it was there.  I knew they were gonna search everything."

(Answer, Decl. of Tara Moran, Ex. 7, DHO Report, ¶ III.B.) Petitioner asserts that the summary omits his statement that the tarp and blanket were part of the usual supplies stored at the bottom of the cart, so it would be impossible for him to know, without unwrapping them, if something was secreted there. Petitioner also asserts that the summary omits his statement that inmate Honeycutt was working in the room where the cart was located, while Petitioner was working in another room.

The DHO found that Petitioner had committed the charged act of Attempted Stealing.

> I find on or about October 9, 2009, at 1:30 p.m. you were attempted stealing from Commissary East Building

4

>5710, at the Federal Correctional Institution, Fort Dix, New Jersey.
>
>This decision is based on the greater weight of evidence provided before me which is documented in the written report provided by the reporting employee. The employee documented:
>
>"On October 9, 2009 while conducting an inspection of the Paint Shop supply cart, Inmate Cooper, reg# 51360-056 and Inmate Honeycutt, reg #21698-058, I found one case of BrushyCreek Premium Chicken Breast valued at 448.72 wrapped up in a tarp and [one] case of Ryan's Ranch Turkey Summer Sausage value at $116.64 per case wrapped up in a blanket on the bottom shelf of the supply cart. Inmates Cooper and Honeycutt were in the Commissary on a work pass (#5595) to paint the interior of the building. The inmates were then escorted to the Lieutenant's office and questioned on [whose[ items they were. Inmate Cooper denied any involvement."
>
>The DHO took into consideration your statements, specifically, "I went back at 11:15 a.m. During that time the commissary workers were back there. I did not place anything on it. When I came back it was there. I knew they were gonna search everything." I found you have every reason to make this assertion in an effort to have the charge against you expunged. Essentially, you have everything to gain and nothing to lose in that effort however, I found the employee involved in this incident to be more credible than yourself as he has no vested interest in you, outcome of the report, and does have a legal obligation to be truthful.
>
>The violation of Code 219A, Attempted Stealing, is supported in the incident report. ...
>
>Based upon the facts provided before me your actions are consistent with Code 219A, Attempted Stealing.

(Answer, Decl. of Tara Moran, Ex. 7, DHO Report, ¶ V.)

The sanctions imposed included disallowance of 13 days good conduct time, loss of 30 days commissary privileges, monetary restitution in the amount of $82.68, and confinement in

disciplinary segregation (30 days suspended, 180 days pending clear conduct). (Answer, Decl. of Tara Moran, Ex. 7, DHO Report, ¶ VI.)

The parties are in agreement that Petitioner has exhausted his administrative remedies. (Answer, Decl. of Tara Moran, Ex. 2, Administrative Remedy History.)

Here, Petitioner contends that the finding of the DHO cannot be sustained under the "greater weight of the evidence" standard because several other inmates had access to the cart, which Petitioner asserts was located in an area of the commissary away from his work site, and because the DHO based his credibility findings on Petitioner's status as an inmate and on the reporting witness's status as a correctional officer. Petitioner seeks expungement of the disciplinary finding and restoration of the forfeited good conduct time. Briefing is complete and this matter is now ready for decision.

## II.   ANALYSIS

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of

6

the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[3] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

---

[3] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[4]  More specifically,

> Because the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison.  Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.
>
> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...."  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement.  Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence

---

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.1 et seq.  See also Bureau of Prisons Program Statement 5270.09 (Inmate Discipline Program).

9

> necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Superintendent v. Hill, 472 U.S. at 455-56 (citations omitted).[5]

It is the "some evidence" aspect of the standard that is at the crux of Petitioner's challenge. Petitioner asserts that, because of the presence of other inmates in his work area, the evidence as to the identity of the person who attempted to steal the meat is "in equipoise." Petitioner also complains that the DHO improperly discounted Petitioner's credibility because, as an inmate, he would have incentive to lie to avoid disciplinary sanctions, but found the correctional officer credible because he had no personal stake in the outcome of the proceeding. Petitioner asserts that this standard for determining credibility is arbitrary and unfair.

The Bureau of Prisons requires inmates to keep their areas free of contraband. See Bureau of Prisons Program Statement 5270.09 (Inmate Discipline Program), Appendix C (Inmate Rights and Responsibilities). In order to further the safe, secure, and orderly running of its institutions, the Bureau of Prisons conducts searches of inmates, inmate housing, and inmate work

---

[5] Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions. See Elkin v. Fauver, 969 F.2d 48 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991); Pressley v. Blaine, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

areas to locate contraband and to deter its introduction and movement in its facilities.  See 28 C.F.R. § 552.10 et seq.

Courts consistently have upheld the rule that inmates can be held to be in "constructive possession" of contraband found in their cells, even where many prisoners had access to those cells. See, e.g., White v. Kane, 860 F.Supp. 1075, 1079 (E.D. Pa. 1994), aff'd, 52 F.3d 319 (3d Cir. 1995) (plaintiff's cell was unlocked while he was out at his work assignment; thus, every prisoner on plaintiff's cell block theoretically had access to plaintiff's cell).  See also Flowers v. Anderson, 661 F.3d 977, 980-81 (8th Cir. 2011) (all inmates are "collectively responsible" for contraband found in eight-man dormitory-style room); Santiago v. Nash, 224 Fed.Appx. 175, 177 (3d Cir. 2007) ("some evidence" rule may be satisfied by application of the constructive possession doctrine where a "small number" of inmates are potentially guilty of the offense charged); Reynolds v. Williamson, 197 Fed.Appx. 196, 199 (3d Cir. 2006) (applying doctrine of constructive possession where only two people were assigned to cell in which sharpened rod was found inside sink drain); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992) (applying doctrine of constructive possession where weapons found in air vent of cell shared by four inmates; 25% probability that sanctioned prisoner was responsible for weapon is sufficient to satisfy the "some evidence" standard); Donahue v. Grondolsky, Civil No. 08-5533,

11

2009 WL 3754045, *5-6 (D.N.J. Nov. 2, 2009), aff'd, No. 10-1147, 2010 WL 3529301 (3d Cir. Sept. 13, 2010) (where prisoner argued he was "set up," constructive possession doctrine is not unreliable where inmate shared cell with three other inmates, cell had been searched earlier the same day, and contraband was found in unlocked cell to which 140 inmates had access); Bailey v. Nash, Civil No. 04-1632, 2005 WL 2300367, *1, *3 (M.D. Pa. Sept. 21, 2005) (contraband found in bunk bed shared by two inmates in dormitory-style area housing six to ten inmates).

The Court of Appeals for the Third Circuit has extended this "constructive possession" doctrine to contraband found in a prisoner's work area.  See Solomon v. Warden, FCI Fairton, No. 12-1438, 2012 WL 6052022 (3d Cir. Dec. 6, 2012) ("constructive possession" established where inmate worked with two other inmates, under ultimate control of prison staff, in area where contraband found).  See also Cason v. McNeil, Civil No. 07-0261, 2009 WL 1490613 (N.D. Fla. May 22, 2009) ("some evidence" standard met where contraband located in desk in prisoner's work area to which 30 other inmates had access); Harms v. Godinez, 829 F.Supp. 259 (N.D. Ill. 1993) ("some evidence" standard met where contraband is found in trash can in commissary area occupied by six inmates).  Cf. Broussard v. Johnson, 253 F.3d 874 (5th Cir. 2001) ("some evidence" standard not met where only evidence is

12

location of contraband in kitchen area to which approximately 100 inmates had access).

Applying this guidance, therefore, there was "some evidence" that Petitioner was in constructive possession of the meat on the paint cart. This Court will not re-weigh the evidence or reconsider the credibility of the witnesses. Petitioner argues here that "numerous" commissary employees had access to the cart. There is no evidence in the administrative record that Petitioner argued to the DHO that "numerous" commissary employees had access to the cart, and this Court will not consider that argument now. See Reynolds v. Williamson, 197 Fed.Appx. 196 at 199-200 (3d Cir. 2006); Hamilton v. O'Leary, 976 F.2d at 345 (court will not consider evidence that 32 inmates had access to air vent in which contraband gun was found, where record does not reflect that information was provided to the disciplinary committee). Moreover, in the administrative remedy process, Petitioner asserted that "approximately 10 commissary employees" had access to the cart. (Answer, Decl. of Tara Moran, Ex. 2.) In any event, in view of the fact that only Petitioner and one other prisoner had responsibility for transporting the cart to and from the work area, the fact that approximately ten other prisoners had access to the cart while it was in the commissary area would not disturb this Court's conclusion that the "some evidence" standard was met. Cf. Hamilton, 976 F.2d at 346 n.1 (although 32

inmates theoretically had access to air vent, it is "highly improbable" that all 32 inmates could have placed the weapons in the vent so that they could have been reached from cell where they were found); Gordon v. Yost, Civil No. 04-3161, 2006 WL 2345944 (W.D. Pa. Aug. 10, 2006) (it is "pure speculation" that inmate not assigned to open cell would have hidden weapon there, where it would have done him little or no good).

### III.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


At Camden, New Jersey            s/ Noel L. Hillman
                                 Noel L. Hillman
                                 United States District Judge

Dated: March 7, 2013